[No. 38827.    Department One.    June 29, 1967.]

UNITED STATES FIDELITY AND GUARANTY COMPANY, *Respondent*, v. AL DOHNER *et al., Defendants,* NORMAN FINLAYSON *et al., Appellants.*\*

*Joseph T. Pemberton, Jacob L. Smith,* and *R. F. Atwood,* for appellants.

*Skeel, McKelvy, Henke, Evanson, & Uhlmann, Frederick V. Betts,* and *James M. Lindsey, Jr.,* for respondent.

JAMES, J.†—Respondent sought and obtained a judgment declaratory of its nonliability under the terms of a policy of insurance purchased by defendant Al Dohner. Under the terms of the policy respondent agreed to indemnify the insured as to all sums which he became legally obligated to pay because of injuries sustained by any person "caused by accident and arising out of . . . the ownership, maintenance or use of the premises, and all operations necessary or incidental thereto."

The premises insured were, by the terms of the policy, classified as a "barber shop or beauty parlor."

Dohner operated a beauty parlor upon the premises. On December 6, 1963, the appellant, Bluma Finlayson, was allegedly injured in the manner hereinafter described during the course of a "beauty treatment."

\*Reported in 429 P.2d 883.

†Judge James is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

An endorsement to the policy provided that coverage "does not apply to injury . . . due to the rendering of . . . tonsorial . . . services or treatments."

In her complaint against Dohner Mrs. Finlayson alleged that as she was receiving her beauty treatment the chair in which she was sitting, broke and the plaintiff sustained severe and permanent injuries to her back as a result of the chair located on the premises owned by the defendant collapsing. The defendants were negligent in allowing the chair to be used by the clients and public for the purposes of receiving beauty treatments. That the defendants in the exercise of ordinary care should have known that the chair was not safe for its intended use and knew or should have known that the chair should be repaired or inspected by them before its use by the public and particularly the plaintiff herein.

For the purpose of the declaratory judgment action, however, the parties agreed to the following statement of facts:

Defendant Al Dohner, a hair dresser by occupation, operates a "four chair" beauty shop in Blaine, Washington. On December 6, 1963 at approximately 1:00 p.m., defendant Bluma Finlayson was at Mr. Dohner's beauty shop by appointment for a permanent. She had been one of Mr. Dohner's steady customers for a couple of years. Mr. Dohner's shop was laid out with booths so that the customers could not see each other. Mrs. Finlayson was in a booth in one of Mr. Dohner's reclining chairs. While he trimmed her hair the chair was in an upright position. After 15 minutes of trimming, Mr. Dohner turned the chair around to the wash basin where he would recline the back of the chair so that Mrs. Finlayson's head would be in the shampoo bowl. The back of this beauty shop chair reclined by its own weight on releasing a lever catch. The back is supported by a ratchet mechanism and can be positioned at various angles. Mrs. Finlayson was leaning on the back of the chair and when Mr. Dohner released the catch, the chair went back with an unusually fast start. It fell one-eighth or one-quarter inch and then stopped suddenly [*sic*] at the next ratchet slot. At this point Mrs. Finlayson exclaimed, "Oh"! Mr. Dohner then lowered the chair the rest of the way in a normal manner and went ahead with the shampoo. After that he gave her a permanent and she left the shop. The

chair in question was about three years old and was purchased new by Mr. Dohner. It has not given him any trouble other than on this one occasion. No repairs were made to the chair and it is still in use in Mr. Dohner's shop. Mr. Dohner's customers normally remain erect until the back of the chair is reclined and then they lower themselves to the shampoo bowl. He releases the catch on the chair with his right hand and places his left hand under the back of the chair. He alerts his new customers by saying either "now you raise up while I let the chair down," or "lean forward." Mr. Dohner's older customers, however, are experienced with the procedure and do not require this word of caution.

Based upon the agreed statement of facts the trial court concluded that the policy did not provide coverage for the injury allegedly received by Mrs. Finlayson.

We agree. Appellant points out that the trial judge was persuaded by his understanding of *Harris v. Fireman's Fund Indem. Co.*, 42 Wn.2d 655, 257 P.2d 221 (1953), and argues that the case is clearly distinguishable. On the other hand, respondent considers the case to be "on all fours."

We agree with appellant that the *Harris* case is not determinative of the question presented here. In *Harris* the injury occurred in the course of an osteopathic treatment when a defective treatment table collapsed. The critical considerations were that the physician was chargeable with knowledge of a defect in the table, that the table was "especially designed to enable an osteopathic physician to give his patients the type of treatment which he was licensed to give" and that the table "was as much a part of an osteopath's professional equipment as an operating table is part of a surgeon's professional equipment." *Harris v. Fireman's Fund Indem. Co., supra,* at 660. Under such a factual pattern we held that there was no coverage under the osteopath's policy which contained an endorsement excluding from coverage "any malpractice, error, negligence or mistake committed by any person in the performance or omission of professional services."

We do not find it necessary to consider respondent's argument that "Dohner's reclining beauty parlor chair was

as much a part of his professional equipment as the osteopath's table in the *Harris* case." Here it is established by the agreed facts that the sole proximate cause of Mrs. Finlayson's alleged injury was Dohner's failure to follow his normal procedure in positioning her for the shampoo. He did not alert her to "lean forward," but instead released the catch while her weight was bearing upon the back of the chair. Contrary to the allegations of the complaint, the chair was not defective; it did not break nor collapse. The chair was safe for its intended use and it did not need repair. Dohner's positioning of Mrs. Finlayson for the shampoo was pursuant to the "rendering of . . . tonsorial . . . services or treatment" and was an activity expressly excluded from coverage.

The judgment is affirmed.

FINLEY, C. J., WEAVER, ROSELLINI, and HALE, JJ., concur.